The next case will be 067239, Snyder v. Secretary of Veterans Affairs. Mr. Carpenter. Thank you, Your Honors. Court please. Kenneth Carpenter appearing on behalf of Mr. Snyder. Mr. Snyder is an attorney seeking the full payment of his fee under 38 U.S.C. 5904. The court below, we believe, made a critical error in consideration of the provisions of 38 U.S.C. 5313. Mr. Carpenter, can you help us out a little bit with some of the background information about what happens in this incarceration situation? Mr. Creekmore, Mr. Snyder's client, was incarcerated for a felony 30-year sentence. That's right. Under the law, the maximum he could receive from his past-due benefits was 10%. Is that correct? That's not quite right, Your Honor. He was entitled to whatever his disability evaluation justifies, regardless of what it justifies over... If he had not been incarcerated, he would have received a check or whatever, a wire transfer, some $90,000. That's correct. The full amount. That's correct. Instead, he got roughly 10% of it. He got 10%. Hold up just a minute so everybody understands what the nature of the game is. We're beginning with a veteran who is in prison. Is that right? That's correct. And that veteran has filed for a disability claim. That's correct. And he eventually gets 70% disability. That's correct. But the law says he can only be paid a 10% rating while he is in prison. Actually, what the law requires is that the VA shall not pay him more than 10%, regardless of what the rating is. So it is a de facto reduction to a level of 10%. And the lawyer who got this 70% rating is now claiming a fee, a legal fee, based on what Creekmore might have gotten had he not been in prison, which would have been 70%. Whereas the government said, no, no, we're going to base your fee, which is a percentage of the award, on the 10% rating because that's all you're entitled to as a payout. We're going to give you 20% of the 10%. That is where we are. That is where we are. And what happens to the amount that he didn't get? There's no apportionment here because there is no wife or a needy wife or needy children. That's correct. No dependents. So assume that he was released from jail any day now. Would he then get the 90%? No. His 100% would be restored upon application to the VA for the restoration, for his prospective monthly payments. And so the, can I call it the 90% for purposes of order? Sure. The 90% eschews to the government and VA? That's correct. The government keeps it? It goes right back to the treasury. It's sort of a- The government keeps it all, though. If he had a wife or children that the secretary felt qualified under the need test, then that 90% would be paid back? That's correct. Well, there is a provision that the secretary may apportion the balance of the amount due, or what the court is referring to as the 90%. I didn't see a policy argument in your brief, Mr. Carver, but I assume that you would agree there is one. If you read 5904D1, which provides that an attorney is entitled to up to 20% of the past due, isn't the policy behind that statute designed to encourage attorneys to want to take cases, to represent veterans as a general proposition? Actually, it's to do more than that. It's to encourage them to take the case and to cap their fee at 20%. And in consideration for the capping of their fee at 20%, then the government is obligated, the VA is obligated to withhold that fee. If you charge more than that amount- Wait a minute. I want to hear the rest of that. If you charge more than 20%- Then the VA is not obligated to pay the fee. At all? At all. So in the context of an incarcerated vet, the only way that an attorney could be compensated under 5904 is to have his fee withheld by the government. Unless the incarcerated vet happens to have money. Well, 5904 wouldn't operate then. The calculus for the fee is based upon the award of past due benefits. There is a provision under VA regulations that would allow an attorney in lieu of that calculus to charge either on an hourly or on a flat fee basis. But that regulation has no application in this fact set. And any attorney that would represent an incarcerated veteran would either have to go under that regulation and charge an hourly rate or a flat fee- But he could? But he could. Oh, absolutely. If there was an apportionment, and I realize there isn't in this case, but if there was an apportionment and the rest of the money was paid to his family, would the fee be on the entire amount or only the 10%? No, on the entire amount. On the entire amount. And that's required by VA regulations which interpret 5904. And the problem that exists in this case is that both the VA, the board, and the court below went beyond 5904 and went off on the separate ship, as described in the court's decision, of 5313. 5313 is a separate obligation, makes no reference to 5904. 5904 makes no reference to 5313. What I saw in your brief, in essence, in response to the government's argument, the government said, well, Mr. Schneider could have asked Creekmore, oh, Creekmore, you don't have a wife or children, I don't want your case. That's correct. And the way I understood your response to be pitched is that you didn't think that was a wise decision because why should Creekmore be denied effective assistance of counsel simply because he didn't have a wife to whom you could apportion? That's correct, Your Honor. And 5904 does not speak to apportionment. We only get into apportionment in the context of the VA's regulation. Am I right in thinking, Mr. Carpenter, that from time to time a veteran who succeeds with a claim actually plants the stake for the fallout of their veterans? Absolutely. That is to say it becomes a precedent and then the department yields and says, okay, then all the other people who come up and ask for this relief are going to get it. That's correct. And so the attorney representing a veteran can be analogized, if you would, to a private attorney general in a trust enforcement case. They're actually winning for more than just their client.  And so if you have, unless you're going to decide that incarcerated veterans are a class of citizens that simply don't deserve the same quality of legal representation that non-incarcerated do, isn't your argument that all incarcerated veterans ought to be treated the same for purposes of effective counsel? Well, actually I would put it all veterans should be treated the same and that 5904 makes no differentiation between a veteran who is incarcerated and a veteran who is not incarcerated. And that that's where the court below went off the tracks. Well, Judge Clevenger has made a very nice policy argument, but the problem I have with that policy argument is that Congress may have declared a different policy depending upon how you read 5313. 5313 simply says that you can't get, in the case of a veteran, the rate of compensation payable under section 1114A, 10% is all he can have while he's incarcerated. Now, I agree with you that neither of these two statutes, the one that entitles him to his rating and the one that takes it away from him, neither of these statutes refers to the other one. But I suppose we have to, in the words of the Latin scholars who write this impera materia or something like that, we have to make sense out of the two statutes. The sense you want to make is that they are essentially independent. Absolutely, yes, and one has absolutely nothing to do with the other. The important thing to understand is that 5313 applies to an incarcerated vet whether he has previously been granted a benefit. Let's assume that Mr. Creekmore was not incarcerated at the time in which he made his claim and in fact had made his claim and gotten his 70% rating before he was incarcerated. 61 days after his incarceration on a felony, his 70% rating is reduced to 10%. The fact is that 5313 operates absolutely independently of 5904. What you're saying is his lawyer, had he gotten his rating before he was incarcerated, his lawyer would have gotten the full 20% or 20% of the full recovery for past due money. That's correct, Your Honor. Isn't 5313A really like in the nature of withholding tax? I mean if you stop and think about what withholding tax is, the government takes a certain amount out of a working person's salary anticipating that they'll give it back to you later? Well, I'm not sure I would analogize it that way, Your Honor, as much as I would analogize that it is a public policy statement by Congress that if you are a veteran and you become incarcerated, we will not pay you the full amount of your disability during the period of incarceration. Where does the Secretary get the authority to keep the 90%? Let's assume someone is incarcerated in a felony and the felony conviction, when he's there for the first time, the felony conviction gets reversed and the person is sprung two years later. The Secretary just laughs at the veteran, right? He says, I keep the money. No, actually, the Secretary would be required to pay that money back. 90%? Yes, because the conviction that took place was vacated and set aside. Therefore, there was no lawful basis for that incarceration. And I have, in fact, been involved in cases like that, and the government has agreed that they do not have a right to keep it if the conviction is reversed. If there is a retrial, as long as he is not incarcerated, and the requirement of 5313 is incarceration, and that is in the custody. After, like in here, let's assume Creekmore got parole and went to a halfway house, would he then get the 90%? He would be entitled to have the restoration of his 70% rating. Of his monthly rating? But he would never get that withheld money back, that's correct. Because the withheld money simply represents months during which he was entitled only to the 10% because he was incarcerated. And to give him the full amount for that would be to violate 5313. That's correct. This is essentially a public policy statement by Congress saying that when you're incarcerated as a disabled veteran, you will get only 10%. Why is that a public policy? Because of the judgment on the part of Congress that disabled veterans who are incarcerated should not continue to receive the disability benefits previously awarded by the VA. Why not? Because of the incarceration. That is the only justification under the statute. I think there's a different policy which helps to understand how this system works. I suspect the different policy is this. A disabled veteran who is getting an award, that award is to recompense him or her for the injuries they sustained in service that limit their ability to make a living. To provide housing and food for themselves. Whereas if you have a disabled veteran for whom the government is providing housing and food, even though involuntarily perhaps, perhaps the government is at least in a position to say there's no reason why we should double pay this veteran much as we appreciate the veteran's work. But we're already providing housing and food. And so the 10% limit seems to make sense. Not as a punishment for the antisocial conduct that led the veteran to the hoosegow, but rather simply an adjustment for free housing. And that argument does have an anchor in 1155, which describes the criteria under which the VA is supposed to rate disabilities. And it includes what your honor suggested, which is that disability shall be evaluated based upon the average impairment of earning capacity. And therefore, I think that your analysis is correct. That policy, I'm going to have this debate with the government lawyer in a minute. That policy seems to me argues in favor of your position. Certainly. It's so nice when the council agrees. Because Mr. Islander appears before our court with a lot of frequency because he's a leader in this bar and it's rare that he gets served up a softball. But I'm going to want to have this debate with government counsel because it seems to me if the policy is not punitive to the veteran, but simply a recognition of the fact that the government's already providing housing. Then it strikes me that to punish the lawyer or indirectly the veteran by not awarding the fee for the service provided doesn't seem to be supported by the statute. But I'll try that out on government lawyer. I'm giving you a little advantage to think about it. Well, you're doing seven seconds. I think we've used all your time.  Thank you. Ms. Cohen. May it please the court. We respectfully request that this court affirm the decision of the Court of Appeals for Veterans Claims. The Veterans Court correctly determined that attorney's fees should be calculated based upon the amount of past due benefits that were actually paid to an incarcerated veteran. Not on the amount of past due benefits that would have been awarded. Absent the required reduction in compensation due. Ms. Cohen, what's the basis for the secretary, you heard this 10%, 90% analogy. What's the basis for the secretary keeping the 90% forever? I'm afraid I'm lost here. Well, Your Honor, it's not as if the secretary is keeping the 90%. It's not that this money is sort of set aside. The full $91,000 has not been set aside. Are you saying that Creedmoor was never entitled to the 90,000? If he were not incarcerated and entitled to the 90,000, that would be paid out. But the fact that he is. Are you saying if Creedmoor had received his entitlement before he was incarcerated, went to jail the next day, then he would have been entitled to what? Then he would have been entitled to the 91,000 if he had been incarcerated after the decision. Ongoing from that, his future benefits would have been 10%. But if we're just talking about the past due benefits, then he would have been entitled to the full 90,000. But the fact that he was. He was entitled to the full amount of the monthly benefit. It's just that he couldn't get paid. That's correct. Do you understand accrual accounting? I mean, so I thought that when they made, the board made the final decision that over a series of months, over a series of years, he should have been receiving a certain amount of money. And that was, he was entitled to that. But by virtue of the law that says, if you're incarcerated, we don't give you but 10%. That he could only actually receive and enjoy the benefit fruits of 10% of the 90,000. The board found that his disability rating was 70%, as in he was disabled in an amount that would have entitled him to 70% of benefits. But the fact that he was incarcerated during the entire time. That your rationale means that if Creekmore had had a wife, she couldn't have gotten the full 90%. Right? Well, if he had had a dependent incarcerated or not, then she could have. No, no. Take the facts of the case. Okay. Creekmore wins his entitlement while he's incarcerated. Okay. And you say, okay, his entitlement is only 10%. He never was entitled to the other 90. Because he was in jail. Yes, that's true. So just take the same facts and add a wife. If he wasn't entitled to more than the 9,000 bucks, then she didn't need it. She is entitled to the dependent. How could she be entitled to money that he's not entitled to? The entitlement for the apportionment flows from the amount of money to which the veteran was entitled. It seems to me that you're questioned by your petard when you concede that if he had a wife, then the 90% would have gone to her and Snyder would get his full 20% of the lump. Well, the issue, because it would go to his wife. Do you understand the inconsistency in your position? I do understand what you're saying is that if he had a dependent, then that dependent could get over and above the 10% that he gets. If there's no entitlement. You're arguing that Mr. Snyder, pardon me, Creeper himself, was never really entitled to $90,000. Because the entitlement award came while he was incarcerated and the government, the statute said you only get 10%. So his maximum entitlement under the actual award of $90,000, what the $90,000 award for him would have been if he hadn't been in jail when he got the award. Once his entitlement is fixed, that is what you apportion what's left over from the entitlement. Right. It seems to me that when you admit it, that his wife, if he'd had one, would have gotten the 90% and Snyder would have gotten the full 20, undermines your failure to recognize that he was simply accruing this benefit, but a statute saying you can't actually receive it. You can't book it in your pocket and put it in jail. Ms. Cohen, do you think an answer to Judge Clevenger might be, yes, there is an anomaly there, but it's created by the statute? That's exactly true, Your Honor. I mean, there is an anomaly there, but the statute and what Congress decided. The statute doesn't say what's apportioned. The statute just said you can't apportion. Right, you can apportion above the percent that you can get while you're incarcerated. The statute said you can apportion his entitlement. Right? That's correct. That's correct. We're saying he's only entitled to 10% because he was in jail. Yes. But even though he was in jail, he only gets 10. His wife gets the other part. That's correct, and we can't make a policy statement on that, why a dependent would get more, but the statute clearly says dependents can get more. Do you think that lawyers at this case of the firm, do you think lawyers are going to want to represent incarcerated veterans who don't have dependents? I think it would be a consideration that they would have to take into account. When a lawyer chooses to represent a veteran from the start, you never know what benefits you're going to get, and in terms of the VA payments, it's a contingent. But do you want lawyers to represent veterans? Of course. And the Congress would want that, too. They have a policy. They're trying to encourage lawyers to step up after a final board decision to pick it up. Of course, yes. Let's assume I go to the prison and I interview Creekmore, and I say, Creekmore, I'm thinking about taking you on, but I'm only going to get 20% of your 10% if you win unless you've got somebody that can be apportioned. And Creekmore says, well, I've got a wife. Now, how as a lawyer do I know that the secretary has been apportioned? What happens if Creekmore's wife is inheriting some money from her mother? Well, then there wouldn't be apportionment. There wouldn't. So how is the lawyer going to know when the lawyer's stepping up to try and decide whether to represent an incarcerated veteran? How are you supposed to know which one's safe from the point of view of the lawyer being able to make enough money to make it all up? Well, I mean, the lawyer, when evaluating his client, would know what the statutes were governing fees, would know what the specific statutes. So the lawyer's supposed to go out and find Creekmore's wife and ask her what her circumstances are, right? If the lawyer is concerned about how much in fees he might be able to recover. Certainly, and I would say it's the lawyer's responsibility to determine all aspects of his case. And if he's looking into the fee, then yes, whether he had a wife or children, whether they would need the apportionment or not, that would all be a consideration in whether taking on the client. But you'd have to concede that there would be a disincentive. If the client were incarcerated? Especially if the client were incarcerated under your theory and won their report while they were incarcerated. It's true that the attorney would probably end up with less because of the 10 percent reduction, that's true. Let's move back just for a moment to the statutes, which I find very interesting. Section 2A of 5904 says, A fee agreement referred to in paragraph 1 is one under which the total amount of the fee payable to the attorney, 1, is to be paid to the attorney by the secretary directly from any past due benefits awarded on the basis of the claim. That's 5904, uses that term awarded. 5313 says, To the extent provided, a person who is entitled to compensation and who is incarcerated shall not be paid such compensation. Do you read awarded and paid as meaning exactly the same thing, or do those mean two different ideas? It's unclear from 5904 directly what awarded means, which is why the Veterans Court turned correctly to the regulation 20.609. But the regulation is correct only if the regulation is consistent with the statute, isn't it? Right, and since it's unclear what- Are you saying the statute is ambiguous? Yes. This is a Chevron case. Yes, the statute is ambiguous as to its application in this particular case. It does not say what award means. Is 5904 ambiguous on its face, or is 5904 ambiguous only when you're trying to figure out what 5313 means? It's ambiguous when trying to figure out not only 5313, but any statute that would apply that would affect the amount of benefits actually paid to the veteran, including 5313. And that's why you need to turn to the regulation 20.609, which clearly says that the fee agreement will only be honored if an award of past due benefits results in a cash payment to the claimant from which the fee may be deducted. It specifically says cash payment. It's saying that award means a cash payment- That's a regulation, right? That's correct. That's a regulation. If we consider the statute plain on its face, that is, an award is an award and is different from an amount that's paid, you lose? Again, I don't think it's clear what the statute is saying award and award is, so it being ambiguous- Oh, wait a minute. It's my hypothetical, not yours. If we consider 5904 to be plain on its face, we know what an award is, and it's not the same thing as an amount that's paid. Hypothetically, you lose. Am I correct, or is there some other argument? No, I mean, I would say that award could still be the 10% that's paid out. That term could still mean the 10% that the veteran actually gets- Who made the award? I'm sorry, Your Honor? Who made the award? The VA made the award. The award was compelled by a decision of the board, is that right? That's correct. They gave him his disability rating, and because he was incarcerated, they had to reduce that. The VA was incarcerated at the time? At the time of the award, yes. At the time of the award, whatever the award is. Yes. The fact that I knew that Creekmore was incarcerated. Yes. So why did they say that the award was $90,000? The amount that they used to calculate, that was just an amount that they began with to calculate. But they said that's the award. Right. They said the award was $90,000. Right. How can the award have been $90,000 if he was only entitled to 10% as a matter of the award being paid? The word award in the VA's decision in terms of Mr. Creekmore's rating, I believe, is different from the word award in Section 5904. Why is that different? Because in 5904, it's not clear what they mean by award, and if you again look to the regulation, it means payment, clearly. The terminology that the VA uses in determining the disability rating is award, when it has that award column on their rating decision is just what they're starting with, what he would get just based on a 70% disability rating. That's the starting number to calculate, but the award is actually the 10%. And if you look to the next page, I believe it's page 56 in the Joint Appendix. Wouldn't we be influenced by the way in which the VA uses the term award as to whether that's what the statute means? Don't we want to grant some deference to the agency? They said he was awarded $90-something thousand dollars. The statute says an award. Wouldn't we grant some deference to the agency in using that term as a definition of what award means? You do want to grant deference to the agency, but the agency has expressed their opinion on what award means in the regulation 20.609. It was inconsistent with what they said when they made the award on these facts. Is that right? Well, again, what they call an award, the 70% disability rating, does not seem to be the same thing as award in terms of 5904 and the amount of the cash payments that are made. Oh, it should be 5904 in light of their regulation. Correct. Which should we give deference to, the way the agency uses the term or the regulation they wrote some time earlier? The regulation should be given deference to. Do you know whether the regulation was promulgated? I do not, Your Honor. Was it before 1988? Do you know? I do not know. Does it matter? I mean, the Supreme Court has said that regulations of the VA are not entitled to the same deference as other agencies if they were promulgated before the act creating the Veterans Review, because there had never been any judicial review. I understand that, Your Honor. For this case, I don't think it matters exactly when the regulation was promulgated. Well, it would matter in how we look at the meaning of the words award and pay and so forth, and whether the interpretive regulation should be given deference, much deference. Well, Mr. Carpenter, however, is not challenging the validity of this regulation. He's not challenging whether this was a proper interpretation of the statute. He's simply challenging its application in terms of 5313, and therefore the regulation should be given. Now, whether we have this or not, couldn't we on our own recognize it, recognize that principle? Yes. But you're telling us we must defer. And if it's a whole right not previously subject to judicial review, maybe we shouldn't. We'll decide that whether he asks us to or not. You can certainly determine whether the regulation is officially valid or not, although you can only— Well, the question isn't really whether the regulation is valid or not. You see, this case presents us with three potential meanings for the word war. One of them is it's plain on its face as the statute was written, and if we look anywhere, we look to definitions or we look to wherever judges look to find what words mean. That's one possibility. A second possibility is we can look at the way the agency used it in this case when they made an award of $90,000 in writing. Or the third possibility is we can look at it in terms of the regulation that you cite to us. But the question isn't whether the regulation is void or valid. The question is how much weight do we give to that regulation? And Judge Mayer's point is, well, that might depend on when that regulation was adopted. That might not be definitive, but it certainly might have something to say about it. Why should we prefer your regulation to anything else? Because the regulation directly has looked at 5904 and has determined what the VA believes award means in the context of 5904. The way that the VA uses it in terms of disability determinations is entirely separate from this attorney's fees provision. But you have to generate an ambiguity in order to have a reason for the writ, right? Right. If award in 5904 means what everybody always thought it meant in terms of an award to the veteran, then you're arguing that award in 5904 has differing meanings depending on who's received the quote award. If Creekmore received the award before he was incarcerated, it means one thing. It means this. If Creekmore received the award after he was incarcerated, award means something else. If Creekmore had never been incarcerated, award means a third of it. And fourthly, if Creekmore has dependents, it means something else. Yeah. So you're asking us to read all that into 5904. Well, award means, yeah, award means payments actually received, so that would differ based on incarceration, not dependents. It means that basically you take the monthly payments you would have received and you add them up, and that's your award. But you're saying that word means something different depending on who receives the piece of paper. We're saying that, yes, it means. No, you're saying Congress had all this in mind when it decided it wanted to get lawyers engaged in the game because, you know, before lawyers could only get paid $10. Right. There were no lawyers in the system at all. And so Congress wrote a law when they wrote it that said, Snyder, we want you to know the award has 40 new lawyers, right, before you want to step up and get engaged. Well, they wrote the statute saying award would be based on past due benefits, and past due benefits do depend on the situation, whether the veteran's incarcerated, whether or not he has dependents. Past due benefits does depend on all of that. Past due benefits that you'll be getting. Right. It's a shame you're not before the Supreme Court with this case because then we'd have a whole hour to debate, and I'd love to hear you talk about the policy issues, but I fear that our presiding judge won't be so generous. No, we gave Mr. Carpenter a few extra minutes, and unless you have something further, I think it will be about even now. Thank you. If I could begin by clarifying the question about the regulation. The regulation was promulgated after 1988. The regulations involved here interpret 5904, which didn't come into effect until 1988, and I believe they were implemented in 1991. So under Chevron, if we find the ambiguity that is found below, then we would have to give deference to that regulation if it's reasonable. Except that the court below didn't find ambiguity. In fact, the court below found that neither 5904 or 5313 were ambiguous, that they were plain and unambiguous on their face, but they couldn't be reconciled. That's not an ambiguity that entitles the VA to deference of an interpretation of one of the two statutes. But more importantly, Your Honors, if I could correct another factual matter. If you look at the joint appendix at page 57, that is the September 2001 board decision, which remanded the case when Mr. Snyder was previously representing, back to the agency for a decision on the merits. The agency made a decision on the merits, and that decision and the notice of that decision begins at the joint appendix at page 31. And I'd like to direct the court's attention to the notice that was provided in January of 2003. It has a graft that has been created for the notification to Mr. Creekmore. And in the far left column, it says total award amount. Then it says the amount withheld, which is the 90% reduction that Judge Clevenger was talking about, and the monthly entitlement amount is the 10% to which the individual is entitled. Therefore, the award, as used in 5904, is in column one. And that is the calculation upon which Mr. Snyder's fee should have been made, and it was unlawful for the VA not to have paid him the full amount of his fee. All right, thank you. Case is submitted. All rise.